## Case No. 15,526.

### UNITED STATES v. KENTON.

[2 Bond, 97.] [1]

Circuit Court, S. D. Ohio. Feb. Term, 1867.

INTERNAL REVENUE LAWS — INTERPRETATION — "CATTLE BROKER" — LICENSES — FARMER PURCHASING AND SELLING STOCK.

1. In a suit by the United States to recover a fine for pursuing the business of a cattle broker, without having procured a license, it must appear that the person sued dealt in cattle or hogs as his principal business.

2. Occasionally buying and selling such stock, in connection with his main pursuit as a farmer, does not bring him within the operation of the statute requiring a person following the business of a cattle broker to obtain a license.

3. The term "business," as used in the statute, must be limited in its meaning to the main or principal occupation of an individual, and can not extend to selling or buying as merely incidental to another pursuit.

4. A farmer purchasing stock to consume the products of his farm, though with the intention of selling it, is not a cattle broker within the statute.

5. Revenue laws should be rigidly enforced, but not strained to embrace acts not fairly within their scope.

R. M. Corwine, U. S. Dist. Atty.

R. C. Fulton, for defendant.

LEAVITT, District Judge (charging jury). The United States prosecute this suit to recover of the defendant [Simon P. Kenton] the pecuniary fine imposed by the internal revenue laws, upon the allegation that he has pursued the business of a cattle broker without having procured a license for that purpose. There seems to be no controversy as to the facts, and I shall not therefore detain the jury by reciting them. They are doubtless fresh in the recollection of the jury.

The only question in the case is, whether upon the evidence before the jury the defendant is a cattle broker, within the scope and words of the statute, and liable to the fine claimed by the United States for pursuing that occupation without a license for that purpose. This is the first and only case before this court, in which the construction of the statute relating to this subject has been under consideration. Nor have any decisions of other courts been referred to as authorities for the guidance of this court. I shall state, in a few words, the views I entertain upon this question. The statute on which this proceeding is based, provides that any person whose business it is to buy or sell or deal in cattle shall be deemed a cattle broker, and shall procure a license therefor from the proper collector of the revenue, and failing to do so, shall be liable to the fine prescribed by the statute.

The question under consideration turns mainly on the force and effect to be given to the word "business," as used in the statute.

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

The district attorney claims that the proof shows the defendant was a dealer in cattle, and comes within the statute as a cattle broker, or one pursuing the business of dealing in cattle. The counsel for the defendant strenuously oppose this view, claiming that although the defendant dealt to some extent in cattle, it was not his business within the meaning of the law.

The evidence is clear that the defendant, being a farmer, did occasionally buy and sell cattle and hogs. But to bring him within the spirit and scope of the statute, and justify the jury in returning a verdict against him for the fine claimed, they must be satisfied that dealing in stock was his main pursuit or occupation, and that he was in the true sense of the word a cattle broker. A single transaction, or even a series of transactions, incidental to his principal occupation as a farmer, would not bring him within the scope of the law on which the claim of the United States is based. It certainly was not the intent of the law that every act of dealing in cattle or hogs should require a license. There is a class of men in the community, who for profit or gain devote themselves to dealing in stock, and who pursue it as the main business of their lives, and rely on it for their livelihood. They are a professional class, whose business or occupation is well known to the public, and they are the persons required by the statute to procure and pay for a license to pursue their occupation. As a class their calling is as distinct and well known as that of a banker or broker, whose business, as announced to the public, is the loaning of money and the purchase of securities or stocks for the purpose of profit. But it can not be claimed that an individual who, occasionally, as he may have opportunity, loans money, or purchases and sells stocks, thereby becomes a banker or a broker, and is under the necessity of obtaining a license from the government.

If, therefore, the jury find from the evidence that the defendant dealt in cattle or hogs, as incidental to his main occupation as a farmer, or with the purpose of feeding the stock purchased with the products of his farm, in preference to sending the products to market, he can not be regarded as one following the business of a cattle broker within the meaning of the statute.

The case is submitted to the jury with the single additional remark, that although all laws for raising revenue to meet the demands of the government, being necessarily stringent and somewhat severe in their requirements, should have a fair and reasonable construction, and while it is the plain duty of courts and juries to enforce the law in all proper cases, to the end that the government may secure its legal claims, and all frauds be brought to light and punished, they should avoid such action as may excite unnecessary public prejudice and hostility to the entire revenue system. And in this con-

nection, I may remark that it is not expedient to give too much encouragement to informers, who for the mere greed of gain, and not from any just or patriotic motive, assume that position.